UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SARA FACUNDO, as Personal Representative
of the Estate of  HAVICK LUIS FACUNDO, Deceased;
and SARA FACUNDO and STEVE FACUNDO,                    Case No. _____
Individually.                                                                        Hon. _____
                                                                                            Magistrate Judge:_____

            Plaintiffs,

v.

UNITED STATES OF AMERICA,

            Defendant.

_____/
LYNN M. FOLEY  (P35839)
EILEEN E. KROLL  (P44186)
COCHRAN, FOLEY & ASSOCIATES, P.C.
Attorneys for Plaintiffs
15510 Farmington Road
Livonia, Michigan  48154
(734) 425-2400
_____/

## COMPLAINT AND AFFIDAVITS OF MERIT

There is no other pending or resolved civil action arising out of
the transaction or occurrence alleged in this Complaint.

Now come Plaintiffs, Sara Facundo, as Personal Representative of the Estate of Havick Luis

Facundo, deceased, and Sara Facundo and Steve Facundo, Individually, by and through their

attorneys, Cochran Foley and Associates, PC, and for their Complaint respectfully state unto this

Honorable Court as follows:

### JURISDICTION AND VENUE

1.      Under MCL 600.2912(b) Plaintiff served a Notice of Intent to File a Claim on May 27, 2010 naming Dr. Douglas Saylor, Katherine Nerreter, and Mary Ann Fleming and Health Delivery, Inc., as employees and/or agents of Health Delivery, Inc. (hereinafter HDI), and Plaintiff has otherwise complied with all requirements of State of Michigan law, including the attachment of Affidavits of Merit to this Complaint pursuant to MCL 600.2912(e).

2.      In response to the Notice of Intent to File a Claim, the Department of Health and Human Services sent a letter indicating that HDI and its agents and/or employees were deemed Federal entities and therefore any claim for medical malpractice came under the auspices of the FTCA. **See Exhibit 1.**

3.      This is an action for medical malpractice/medical negligence and wrongful death during the prenatal care and delivery provided by employees of HDI, a deemed community health center under the Department of Health and Human Services.  The Department of Health and Human Services indicated that all the individuals named in the Notice of Intent to File Claim, were federal employees at the time of the occurrence.

4.      Plaintiff Sara Facundo is the duly appointed Personal Representative of the Estate of Havick Luis Facundo, deceased by the Probate Court for the County of Bay, State of Michigan. Plaintiffs Sara Facundo and Steve Facundo are the parents of their deceased child, Havick Luis Facundo.  They reside at 314 South Catherine Street, Bay City, Michigan 48706 and thus are residents of the Eastern District of Michigan (Northern Division).

5.      The claims herein are brought against the United States of America pursuant to the Federal Tort Claims Act for money damages as compensation for the wrongful death of Havick Luis Facundo and the pain and suffering of Sara Facundo and the loss of consortium, society and companionship by her husband Steve Facundo, caused by the medical malpractice or medical

negligence or wrongful acts and omissions by employees of the United States of America, while acting within the scope of their employment, under circumstances where the United States, if a private person, would be liable to the Plaintiffs and the decedent's estate in accordance with the laws of the State of Michigan.

6.      The amount in controversy, exceeds $75,000.00 (Plaintiff claimed $3,000,000.00 on Form 95) excluding costs, interest and attorney fees as allowed by law, which brings this action within compliance of the jurisdictional monetary minimum of this Honorable Court.

7.      This action is brought in accordance with the Federal Tort Claims Act, 28 USC sections 1346(b), 2671-2680, which brings this action within the subject matter jurisdiction of this Honorable Court.

8.      Plaintiffs properly presented an Administrative Tort Claim via SF-95 (hereinafter "tort claim") for medical negligence to the United States Department of Health and Human Services pursuant to 28 USC Section 2675(a) on October 14, 2008. **See Exhibit 2.**

9.      By letter dated October 25, 2010, the Department of Health and Human Services acknowledged receipt of the Tort Claim on October 18, 2010 and acknowledged that the Tort Claim had been properly filed with the appropriate federal agency for the named health center and its employees.  **See Exhibit 3.**

10.     There has been no response to this properly presented claim as of the date of filing this complaint and 6 months have now passed.

11.     Pursuant to 28 USC section 2675(a) suit is permissible at the option of the claimant any time after six months has expired from the date of filing a proper claim.   Because there has been no response and a period of time in excess of 6 months has expired since receipt of the tort claim, Plaintiffs deem such failure to make a final disposition of the claims to be a denial of the claims.

12.     The cause of action pled in this complaint is the same one contained in the tort claim presented to the United States Department of Health and Human Services on October 14, 2008.

13.     The United States of America has waived governmental immunity and consented to this lawsuit by the enactment of 28 USC 1346(b).

## NATURE OF THE CASE

14.     This claim arises from the prenatal care and treatment of Sara Facundo during her pregnancy while she was treating with Dr. Douglas Saylor, Katherine Nerreter and Mary Ann Fleming and HDI OB/GYN and Midwifery Services beginning on May 7, 2008, and continuing through her delivery of her son Havick Luis Facundo, on December 16, 2008. When Sara Facundo began displaying signs and symptoms of ongoing abdominal pain, blood in her urine, lack of or decreased fundal height/growth and had a history of preterm labor and smoking, a partial placental abruption was not considered, nor was Sara Facundo evaluated and/or treated for placental abruption or any other abnormality, which ultimately caused another abruption and/or continuing abruption, decreased blood flow to the fetus, decreased oxygenation and the death of Havick Luis Facundo.

15.     The failure by Defendant's agents to evaluate Sara Facundo for placental abruption or any other abnormality or to utilize all diagnostic and treatment modalities available to try to mitigate the risks associated with placental abruption or any other abnormality and to timely and appropriately deliver Havick Luis Facundo by way of cesarean section, directly resulted in his untimely intrauterine fetal death.

## THE PARTIES
### PLAINTIFFS

16.     Havick Luis Facundo was born on December 16, 2008. He had over 50 minutes of resuscitation efforts at birth but these were unsuccessful and he was pronounced dead. His mother,

Sara Facundo, was born on November 21, 1983. Sara was 24 years old in 2008 and was a healthy woman. Steve Facundo is the husband of Sara Facundo and father of Havick Luis Facundo.

17.     At all times relevant hereto, when she became pregnant with Havick Facundo, Sara Facundo received regular prenatal care and treatment with Dr. Saylor and the midwives at Health Delivery, Inc. (HDI)

18.     Sara Facundo had a history of 3 prior births and all three of her prior children were born healthy after normal vaginal deliveries. She had a history of kidney stones with a previous pregnancy and a history of preterm labor.

19.     As a result of medical negligence Sara Facundo's placental abruption was undiagnosed and untreated and, Havick Luis Facundo was not timely and appropriately delivered via cesarean section in a proper manner. Instead, he suffered decreased blood flow and oxygenation and died in utero.

20.     In this lawsuit, Plaintiff, as personal representative, and plaintiffs individually pursue all claims for the estate of their deceased son under the Michigan Wrongful Death Act (MCL 600.2922), the Michigan Survivor Act (MCL 600.2921) and the Federal Tort Claims Act (28 USC 1346 (b)) and any other damages the Court deems reasonable and just.

## DEFENDANT

21.     The United States Department of Health and Human Services is an authorized federal agency of the Defendant, the United States of America.

22.     At all times pertinent to this Complaint, Health Delivery, Inc., also known as HDI OB GYN & MIDWIFERY SERVICES, (HDI) was a corporation organized under the laws of the State of Michigan, located and doing business in Bay City. At all times pertinent to this Complaint, HDI was a Federally Qualified Health Center pursuant to 42 USC Section 233 and was operating under the Department of Health and Human Services.

23.     HDI is a healthcare facility located at 3175 W. Professional Drive, Bay City, Michigan 48706 and is owned and operated by Defendant (Department of Health and Human Services) and this Complaint, "Defendant" refers to the United States of America, United States Department of Health and Human Services and HDI.

24.     HDI, at all times relevant hereto, operated a health care facility and held itself open for care and treatment of the public including Sara Facundo and her fetus Havick Facundo.

25.     At all times relevant hereto, HDI represented and held out to the public, including to Sara Facundo and her fetus Havick Facundo and that it employed and/or maintained on its staff skilled and competent medical and nursing personnel, including obstetricians and midwives and other health care providers.

26.     In November and December 2008, Defendant conducted business in Bay City, Michigan, located in the Eastern District of Michigan (Northern Division) and therefore it is subject to the jurisdiction of this Court.

27.     A physician-patient and a midwife-patient relationship existed between Sara Facundo as well as her fetus, Havick Luis Facundo and Defendant in November and December 2008.

28.     Defendant provided Dr. Douglas Saylor, and midwives Katherine Nerreter and Mary Ann Fleming to its patients, Sara Facundo and her fetus, Havick Luis Facundo, for prenatal care and treatment in November and December 2008.

29.     At all times relevant hereto, Dr. Saylor, Katherine Nerreter CNM and Mary Ann Fleming CNM, acted as the actual and/or apparent agents/servants/employees of HDI, and therefore the United States of America is vicariously liable for their professional negligence/malpractice as set forth in this Complaint. At all times relevant hereto, Dr. Saylor, Katherine Nerreter CNM, and Mary Ann Fleming CNM acted within the scope of their

employment/agency when providing care and treatment to Sara Facundo and her fetus Havick Facundo.

30.  Defendant employed Dr. Saylor, Katherine Nerreter CNM and Mary Ann Fleming CNM in November and December 2008.

31.  Dr. Saylor, Katherine Nerreter CNM and Mary Ann Fleming CNM were agents/servants/employees (actual, apparent, ostensible or by estoppel) of Defendant in November and December 2008.

32.  Dr. Saylor, Katherine Nerreter CNM and Mary Ann Fleming CNM acted within the scope of their employment and/or agency (actual, apparent, ostensible or by estoppel) with Defendant when they provided care and treatment to Sara Facundo and her fetus in November and December 2008.

33.  Dr. Saylor is a physician licensed to practice in the State of Michigan, who at all time relevant hereto, practiced in Bay City, Michigan in November and December 2008, and held himself out as a competent specialist in obstetrics and gynecology.

34.  Katherine Nerreter CNM and Mary Ann Fleming CNM are certified nurses midwives licensed to practice in the State of Michigan, who at all times relevant hereto, practiced in Bay City, Michigan in November and December 2008 and held themselves out a competent specialists in midwifery.

## FACTUAL ALLEGATIONS

35.  Sara Facundo (hereinafter Sara) became pregnant and sought treatment at HDI Ob Gyn and Midwifery Services and was treated by Dr. Douglas Saylor, Katherine Nerreter CNM, and Mary Ann Fleming CNM, well as other physicians, nurses and midwives at HDI. Her expected date of confinement was December 18, 2008. Sara received regular prenatal care from HDI beginning on May 7, 2008 and continuing through December, 2008.

36.     Sara presented to HDI for each of her scheduled prenatal visits.  During each visit, her blood pressure was normal, and her weight gain was normal until November 13, 2008. On that date, Sara was seen by Nurse Midwife, Rose Fife and she was noted to have BH and discharge. Nurse Fife advised Sara to increase her caloric intake and return to the office in one week.

37.     Sara returned to HDI on November 19, 2008, and she was examined by Katherine Nerreter, CNM. On that date there was good fetal movement noted and the exam was essentially normal, although the fundal height had not increased from the previous visit. Katherine Nerreter, CNM, ordered a Group B Strep Culture, which was performed on that day. The result of the GBS was that no Group B Beta Streptocoocus was isolated. The midwife did not order a non-stress test, biophysical profile, ultrasound or investigate any complaints of abdominal pain, or blood and protein in her urine or lack of growth in the fundal height.

38.     On November 25, 2008, Sara returned to HDI for a scheduled prenatal appointment. On that date, she was examined by a person there with the initials, MAF, believed to be Mary Ann Fleming, CNM.  Fetal heart rate was in the 120's, which was lower than previous visits. There was good fetal movement noted and there was a trace of albumin.   The fundal height had decreased from the previous visit.  Sara was advised to return for her regular prenatal visit to be held on December 10, 2008.   The midwife did not order a non-stress test, biophysical profile, ultrasound or investigate any complaints of abdominal pain, or blood and protein in her urine.  Sara was not told to come back in for a visit within 7 days.

39.     On December 10, 2008, Sara presented to HDI.  She was 38 4/7 weeks gestation. On this date, she was examined by Dr. Douglas Saylor. When she first arrived, Sara gave the nurse a urine sample and it revealed a large amount of protein and blood in her urine. Sara advised Dr. Saylor that she had pain in her stomach on her right side and pelvic pressure. Dr. Saylor did not listen to and/or record the fetal heart rate on that date. Dr. Saylor advised Sara to stop working and

go home and rest. He did not order a non-stress test, biophysical profile, ultrasound or investigate any complaints of abdominal pain, or blood and protein in her urine.

40.     Dr. Saylor did not investigate whether there was a placental abruption and he did not diagnose an abruption or timely deliver Havick by cesarean section.

41.     On December 12, 2008, at approximately 9:30 a.m. Sara contacted HDI and advised them that she was still experiencing abdominal pain and she wanted to know the results for her urine tests that were sent to the lab at the hospital. She was told someone would call her back.

42.     When she didn't receive a call back, Sara called the HDI office two more times during the day, asking to speak to someone about her ongoing abdominal pain.  Each time, she was told a nurse would call her back.

43.     At approximately 4:00 p.m on December 12, 2008, a nurse from HDI contacted Sara.  Once again, Sara told the nurse that she was still having abdominal pain. The nurse advised her that her urine showed no signs of infection and that she would advise Dr. Saylor about the continued abdominal pain. The nurse called back a few minutes later and advised Sara that Dr. Saylor recommended that she continue resting and that she should also drink a lot of fluids.  He did not order a non-stress test, biophysical profile, ultrasound or investigate any complaints of abdominal pain, or blood and protein in her urine.  He did not have her go to the hospital or to HDI for examination.

44.     On or about December 15, 2008, at approximately 11:30 p.m. Sara began having periodic contractions and shortly thereafter, felt a longer contraction that lasted approximately 10 minutes.  Directly after this contraction, Sara went to the bathroom and discovered a large amount of vaginal blood. Her husband Steve immediately rushed her to the hospital.

45.     Sara was taken to Bay Regional Medical Center where she was examined and hooked up to a fetal monitor. Initially, fetal heart tomes could not be heard but eventually were noted to be in the 50's.

46.     Sara was admitted to Bay Regional Medical Center under the care of Dr. Maria Teresa Benitez. She was rushed to the operating room where Dr. Benitez performed a cesarean section and confirmed that Sara had suffered a placental abruption.

47.     Havick Luis Facundo was born in cephalic presentation and with no spontaneous respirations or heart rate with minimal blood tinged amniotic fluid. There was a blood loss of 1500 cc with blood clots noted and a large amount of blood clots behind the placenta. Attempts to resuscitate baby Havick were unsuccessful and Havick was pronounced dead on December 16, 2008, after 50 minutes of attempted resuscitation efforts.

## COUNT I
### PHYSICIAN MALPRACTICE/NEGLIGENCE

48.     Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 47 above.

49.     Defendant, United States of America, individually and through the Department of Health and Human Services, individually and through its employees at HDI, including but not limited to **Dr. Douglas Saylor,** owed Sara Facundo and her fetus Havick Facundo a legal duty to provide them with medical care and treatment in accordance with the standard of care and practice and in a manner which did not constitute professional negligence and/or malpractice.

50.     Defendant United States of America, individuall7y and through the Department of Health and Human Services, individually and through its employees at HDI, including but not limited to **Dr. Douglas Saylor,** breached the legal duty of care owed to Sara Facundo and her fetus, Havick Facundo, including but not limited to, the following among others:

A.      failed and neglected to exercise the reasonable care, diligence and skill ordinarily and/or reasonably exercised and possessed by obstetricians/gynecologists under same or similar circumstances.

B.      failed and neglected to timely and adequately investigate the patient's complaints, including her continued complaints of abdominal pain, blood in her urine and protein in her urine between December 10, 2008 and December 15, 2008;

C.      That if the patient reports continued abdominal pain and has blood in her urine at 38 weeks gestation, failing and neglecting to order or initiate further testing and treatment.

D.      failed and neglected to understand that in a pregnant woman, with a history of cigarette smoking, a history of kidney stones, and a history of preterm labor, with continued complaints of abdominal pain in her third trimester, requires prompt investigation and examination;

E.      failed and neglected to understand that a woman who is displaying signs and symptoms of abdominal pain with a history of kidney stones, smoking and preterm labor, requires an ultrasound and/or an MRI and proper diagnostic work up and to proceed with  further medical intervention if necessary in order to prevent intrauterine death of the fetus;

F.      failed and neglected to understand that when a woman is displaying signs and symptoms of ongoing abdominal pain and blood in her urine, that a placental abruption should be part of the differential diagnosis;

G.      failed and neglected to utilize all diagnostic and treatment modalities available to try to mitigate the risks of a placental abruption and prevent fetal death;

H.      That between November 19, 2008 and December 15, 2008 failed and neglected to properly investigate the patient's complaints of abdominal pain, associated with blood and protein in the urine;

I.      That between December 10, 2008, and December 15, 2008, failed and neglected to perform appropriate fetal testing on the fetus to determine fetal well-being including but not limited to Non-stress testing, ultrasounds, and Biophysical Profiles in a timely and appropriate manner;

J.      failed and neglected to diagnose placental abruption in a timely and appropriately manner after performing appropriate testing in a timely manner, and deliver baby Havick promptly by way of cesarean section prior to his intrauterine fetal death;

K.   failed and neglected on December 10, 2008, to order appropriate testing including but not limited to: an immediate Non-stress test, ultrasound, MRI and a Biophysical Profile to determine fetal well-being;

L.   failed and neglected to understand and recognize the importance of following up with a patient who has abdominal pain, blood in her urine and a history of cigarette smoking;

M.   failed and neglected to recognize the importance of following up on the patients complaints of ongoing abdominal pain and a history of kidney stones;

N.   failed and neglected to immediately hospitalize the patient on December 10, 2008, for further testing, fetal monitoring and medical intervention in order to ensure maternal and fetal well-being;

O.   failed and neglected to appropriately and timely diagnose the patient with the early stages of a placental abruption and take the appropriate and timely steps to prevent a complete abruption and deliver the fetus to prevent intrauterine fetal demise;

P.   failed and neglected to promptly and appropriately deliver the fetus at 38 weeks to prevent intrauterine fetal demise;

Q.   failed and neglected to request that Sara Facundo return to the office or go to the hospital when she called HDI on December 12, 2008, at approximately 9:30 a.m. and advised the staff that she was still experiencing pain, in order to perform a complete evaluation;

R.   failed and neglected to provide honest, accurate, truthful and complete information to his patient about the need for the further medical intervention in order to prevent intrauterine fetal death;

S.   That in the alternative to hospitalizing the patient, failed and neglected to have a honest, accurate and truthful discussion with the patient in order to educate her about regarding signs and symptoms of placental abruption, including but not limited to ongoing abdominal pain, blood in her urine, decreased in fetal movement, in order for the patient to have an accurate understanding of further signs/symptoms to alert the OB/GYN about and/or the need to seek immediate medical attention;

T.   That in the alternative to hospitalizing the patient, failed and neglected to have the patient return to the office daily for proper evaluation and further testing in order to assess for maternal and fetal well-being;

U.   That in the alternative to hospitalizing the patient, failed and neglected to order non-stress testing, ultrasounds and biophysical profiling urgently and

to repeat the testing as necessary in order to assess for maternal and fetal well-being and to prevent intrauterine fetal death;

V.   failed and neglected to timely and appropriately rule in or out a kidney stone, in order to understand that ongoing complaints of abdominal pain, with accompanying blood and protein in the urine, may be related to something other than a kidney stone;

W.   failed and neglected to understand and recognize that placental abruption can cause ongoing complaints of abdominal pain and blood and protein in the urine of a woman who is more than 38 weeks gestation;

X.   failed and neglected to timely and appropriately investigate that patient's complaints of ongoing abdominal pain (as well as blood and protein in the urine) in order to rule in or out a placental abruption;

Y.   failed and neglected to diagnose the patient's placental abruption and timely deliver the fetus prior to intrauterine fetal death.

51.   That as a direct and/or proximate result of the deviations from the standards of care set forth above, Sara Facundo suffered a partial placental abruption or other abnormality that went undiagnosed and untreated and in turn, caused further placental abruption or other abnormality, blood loss, loss of blood and oxygen to the fetus Havick Facundo and ultimately the death of Havick Facundo.

52.   As a direct and/or proximate result of the deviations from the standards of care set forth above Sara Facundo's fetus Havick Facundo suffered severe fetal compromise, hypoxic-ischemic insult and anoxia, resulting in his intrauterine death on December 16, 2008.

53.   If the care and treatment enumerated in this complaint had been employed, Sara Facundo's partial abruption or other abnormality would have more likely than not been diagnosed and treated in a timely manner and a cesarean section would have been performed which more likely than not, would have resulted in Havick Facundo being born alive and surviving and would have avoided his death.

54.   At all times relevant hereto, Dr. Douglas Saylor was an agent, employee and/or representative of Defendant, United States of America and therefore, Defendant is responsible for

the negligent acts committed by their agents, employees and representatives, including, but not limited to, Dr. Saylor and any other obstetricians that were involved in the the care and treatment of Sara Facundo and her fetus Havick Facundo at HDI.

55. As a further direct and proximate result of said occurrences, negligent acts and omissions, professional negligence and malpractice set forth above, decedent Havick Facundo's interested parties and heirs have suffered those damages as allowed by the Federal Tort Claims Act and MCL 600.6922, including the loss of decedent's care, comfort, support, society and companionship. Plaintiffs requests all damages that are fair and just under the circumstances, including without limitation, the following:

A. Reasonable medical, hospital, funeral and burial expenses;

B. Reasonable compensation for the pain and suffering and emotion distress regarding the loss of Havick Facundo;

C. Losses suffered by the next of kin as a result of the decedent's death, including:

1. Loss of financial support;

2. Loss of services;

3. Loss of gifts and other valuable gratuities;

4. Loss of society and companionship;

5. Other miscellaneous losses.

D. Any other damages that a court or jury shall consider fair and equitable and any other damages properly recoverable under Michigan law.

56. As a further direct and proximate result of said occurrence, said injuries and subsequent death of Havick Facundo, and all other heirs to the Estate of Havick Facundo have been and will continue to be deprived of love, affection, aid, care, companionship, comfort, services, society, help, and consortium which Havick Facundo would have provided but for his injuries and death as aforesaid.

14

57.     As a proximate consequence of defendant's and their agents' and/or employees' breaches in the respective duties and standards of practice and care, Plaintiffs and all other heirs to Decedent's Estate, have suffered mental anguish and profound grief and will so suffer in the future.

58.     As a proximate consequence of defendant's and their agents' and/or employees' breaches in the respective duties and standards of practice and care, Plaintiff Sara Facundo suffered mental anguish, pain, emotional distress and other non-economic damages and will continue to suffer in the future. Her husband Steve Facundo has suffered the loss of society, companionship and consortium and services of his wife.

Wherefore, Plaintiffs request the Court enter judgment against the United States of America in such amount as is determined to be fair and reasonable, together with costs, interests and attorney fees.

## COUNT II
## MIDWIFE MALPRACTICE/NEGLIGENCE

59.     Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 58 above.

60.     Defendant, United States of America, individually and through the Department of Health and Human Services, individually and through its employees at HDI, including but not limited to **Katherine Nerreter CNM and Mary Ann Fleming CNM,** owed Sara Facundo and her fetus Havick Facundo a legal duty to provide them with medical and midwifery care and treatment in accordance with the standard of care and practice and in a manner which did not constitute professional negligence and/or malpractice.

61.     Defendant United States of America, individuall7y and through the Department of Health and Human Services, individually and through its employees at HDI, including but not limited to **Katherine Nerreter CNM and Mary Ann Fleming CNM,** breached the legal duty

owed to Sara Facundo and her fetus, Havick Facundo, including but not limited to, the following among others:

A.   failed and neglected to timely and adequately investigate the patient's complaints, including her continued complaints of abdominal pain, blood in her urine and protein in her urine between December 10, 2008 and December 15, 2008 if they were involved in the care and treatment;

B.   That if the patient reports continued abdominal pain and has blood in her urine at 38 weeks gestation failed and neglected to promptly initiate further testing and treatment;

C.   failed and neglected to understand that in a pregnant woman, with a history of cigarette smoking, a history of kidney stones, and a history of preterm labor, with continued complaints of abdominal pain in her third trimester, requires prompt investigation and examination;

D.   failed and neglected to understand that a woman who has signs and symptoms of abdominal pain with a history of kidney stones, smoking and preterm labor, requires an ultrasound and/or an MRI and proper diagnostic work up and to proceed with  further medical intervention if necessary in order to prevent intrauterine death of the fetus;

E.   failed and neglected to understand that when a woman is displaying signs and symptoms of ongoing abdominal pain and blood in her urine, that a placental abruption should be part of the differential diagnosis;

F.   failed and neglected to utilize all diagnostic and treatment modalities available to try to mitigate the risks of a placental abruption and prevent fetal death;

G.   That between November 19, 2008 and December 15, 2008 failed and neglected to properly investigate the patient's complaints of abdominal pain, associated with blood and protein in the urine and slow growth or decreased fundal height;

H.   That between November 19, 2008, and December 15, 2008, failed and neglected to order and perform appropriate testing on the fetus to determine fetal well-being including but not limited to Non-stress testing, ultrasounds, and Biophysical Profiles in a timely and appropriate manner;

I.   failed and neglected to diagnose placental abruption in a timely and appropriately manner after performing appropriate testing in a timely manner, and deliver baby Havick promptly by way of cesarean section prior to his intrauterine fetal death;

J.    On December 10, 2008, failed and neglected to order appropriate testing including but not limited to:  an immediate Non-stress test , ultrasound, MRI and a Biophysical Profile to determine fetal well-being;

K.    failed and neglected to understand and recognize the importance of following up with a patient who has abdominal pain, blood in her urine and a history of cigarette smoking, and slow growth or decreased fundal height and advise the patient to return for re-evaluation within a week of being seen on November 25, 2008;

L.    failed and neglected to recognize the importance of following up on the patient with complaints of ongoing abdominal pain and a history of kidney stones and slow growth or decreased fundal height and advise the patient to return for re-evaluation within a week of being seen on November 25, 2008;

M.    failed and neglected to immediately hospitalize the patient on December 10, 2008, for further testing, fetal monitoring and medical intervention in order to ensure maternal and fetal well-being;

N.    failed and neglected to appropriately and timely diagnose the patient with the early stages of a placental abruption and take the appropriate and timely steps to prevent a complete abruption and deliver the fetus to prevent intrauterine fetal demise;

O.    failed and neglected to promptly and appropriately deliver the fetus at 38 weeks to prevent intrauterine fetal demise;

P.    failed and neglected To request that Sara Facundo return to the office or go to the hospital when she called HDI on December 12, 2008, at approximately 9:30 a.m. and advised the staff that she was still experiencing pain, in order to perform a complete evaluation;

Q.    failed and neglected to provide honest, accurate, truthful and complete information to the patient about the need for the further medical intervention in order to prevent intrauterine fetal death;

R.    That in the alternative to hospitalizing the patient, failed and neglected to have a honest, accurate and truthful discussion with the patient in order to educate her about regarding signs and symptoms of placental abruption, including but not limited to ongoing abdominal pain, blood in her urine, decreased in fetal movement, in order for the patient to have an accurate understanding of further signs/symptoms to alert the OB/GYN  and midwife about and/or the need to seek immediate medical attention;

S.    That in the alternative to hospitalizing the patient, failed and neglected to have the patient return to the office daily for proper evaluation and further testing in order to assess for maternal and fetal well-being;

T.    That in the alternative to hospitalizing the patient, failed and neglected to order non-stress testing, ultrasounds and biophysical profiling urgently and to repeat the testing as necessary in order to assess for maternal and fetal well-being and to prevent intrauterine fetal death;

U.    failed and neglected to timely and appropriately rule in or out a kidney stone, in order to understand that ongoing complaints of abdominal pain, with accompanying blood and protein in the urine, may be related to something other than a kidney stone;

V.    failed and neglected to understand and recognize that placental abruption can cause ongoing complaints of abdominal pain and blood and protein in the urine of a woman who is more than 38 weeks gestation;

W.    failed and neglected to timely and appropriately investigate that patient's complaints of ongoing abdominal pain (as well as blood and protein in the urine) in order to rule in or out a placental abruption;

X.    failed and neglected to diagnose the patient's placental abruption and timely deliver the fetus prior to intrauterine fetal death;

Y.    failed and neglected to timely and appropriately communicate with or bring to the OB/Gyn's attention that the patient is having ongoing complaints of abdominal pain in her third trimester, accompanied by blood and protein in her urine;

62.    That as a direct and/or proximate result of the deviations from the standards of care set forth above, Sara Facundo suffered a partial placental abruption or other abnormality that went undiagnosed and untreated and in turn, caused further placental abruption or other abnormality, blood loss, loss of blood and oxygen to the fetus Havick Facundo and ultimately the death of Havick Facundo.

63.    As a direct and/or proximate result of the deviations from the standards of care set forth above Sara Facundo's fetus Havick Facundo suffered severe fetal compromise, hypoxic-ischemic insult and anoxia, resulting in his intrauterine death on December 16, 2008.

64.    If the care and treatment enumerated in this complaint had been employed, Sara Facundo's partial abruption or other abnormality, would have more likely than not been diagnosed and treated in a timely manner and a cesarean section would have been performed which more likely

than not, would have resulted in Havick Facundo being born alive and surviving and would have avoided his death.

65.    At all times relevant hereto, Katherine Nerreter CNM and Mary Ann Fleming CNM were agents, employees, servants and/or representatives of Defendant, United States of America and therefore, Defendant is responsible for the negligent acts committed by their agents, employees and representatives, including, but not limited to Katherine Nerreter CNM and Mary Ann Fleming CNM, and any other midwives that were involved in the care and treatment of Sara Facundo and her fetus Havick Facundo at HDI.

66.    As a further direct and proximate result of said occurrences, negligent acts and omissions, professional negligence and malpractice set forth above, decedent Havick Facundo's interested parties and heirs have suffered those damages as allowed by the Federal Tort Claims Act and MCL 600.6922, including the loss of decedent's care, comfort, support, society and companionship.   Plaintiffs requests all damages that are fair and just under the circumstances, including without limitation, the following:

  A. Reasonable medical, hospital, funeral and burial expenses;

  B. Reasonable compensation for the pain and suffering and emotion distress regarding the loss of Havick Facundo;

  C. Losses suffered by the next of kin as a result of the decedent's death, including:

   1. Loss of financial support;

   2. Loss of services;

   3. Loss of gifts and other valuable gratuities;

   4. Loss of society and companionship;

   5. Other miscellaneous losses.

  D. Any other damages that a court or jury shall consider fair and equitable and any other damages properly recoverable under Michigan law.

67.   As a further direct and proximate result of said occurrence, said injuries and subsequent death of Havick Facundo, and all other heirs to the Estate of Havick Facundo have been and will continue to be deprived of love, affection, aid, care, companionship, comfort, services, society, help, and consortium which Havick Facundo would have provided but for his injuries and death as aforesaid.

68.   As a proximate consequence of defendant's and their agents' and/or employees' breaches in the respective duties and standards of practice and care, Plaintiffs and all other heirs to Decedent's Estate, have suffered mental anguish and profound grief and will so suffer in the future.

69.   As a proximate consequence of defendant's and their agents' and/or employees' breaches in the respective duties and standards of practice and care, Plaintiff Sara Facundo suffered mental anguish, pain, emotional distress and other non-economic damages and will continue to suffer in the future. Her husband Steve Facundo has suffered the loss of society, companionship and consortium and services of his wife.

Wherefore, Plaintiffs request the Court enter judgment against the United States of America in such amount as is determined to be fair and reasonable, together with costs, interests and attorney fees.

## COUNT III

### VICARIOUS LIABILITY

70.   Plaintiff repeats and incorporates by reference the allegations in paragraphs 1-69 above.

71.   The United States of America is vicariously liable for the professional negligence/malpractice of Dr. Saylor, Katherine Nerreter CNM, and Mary Ann Fleming CNM, as set forth in this Complaint under the doctrines of actual, apparent, and ostensible agency, and joint

venture/joint enterprise liability and Respondeat Superior as well as under MCL 333.21513(a) and 28 USC 1346.

72.     The interested parties and heirs of the decedent's estate have suffered those damages as allowed by the Federal Tort Claims Act and MCL 600.6922 including the loss of decedent's care, comfort, support, society and companionship.  Plaintiffs requests all damages that are fair and just under the circumstances, including without limitation, the following:

    A.     Reasonable medical, hospital, funeral and burial expenses;

    B.     Reasonable compensation for the pain and suffering and emotion distress regarding the loss of Havick Facundo;

    C.     Losses suffered by the next of kin as a result of the decedent's death, including:

        1. Loss of financial support;

        2. Loss of services;

        3. Loss of gifts and other valuable gratuities;

        4. Loss of society and companionship;

        5. Other miscellaneous losses.

    D.     Any other damages that a court or jury shall consider fair and equitable and any other damages properly recoverable under Michigan law.

73.     As a proximate consequence of defendant's and their agents' and/or employees' breaches in the respective duties and standards of practice and care, Plaintiff Sara Facundo suffered mental anguish, pain, emotional distress and other non-economic damages and will continue to suffer in the future. Her husband Steve Facundo has suffered the loss of society, companionship and consortium and services of his wife.

WHEREFORE, Plaintiffs request the Court enter judgment against the United States of America in such amount as is determined to be fair and reasonable, together with costs, interests and attorney fees.

                                    S/Lynn M. Foley
                              COCHRAN FOLEY AND ASSOCIATES, P.C.
                              LYNN M. FOLEY  (P35839)
                              EILEEN E. KROLL  (P44186)
                              Attorney for Plaintiff
                              15510 Farmington Road
                              Livonia, Michigan  48154
Dated:  May 18, 2011          (734) 425-2400

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SARA FACUNDO, as Personal Representative
of the Estate of HAVICK LUIS FACUNDO, Deceased;
and SARA FACUNDO and STEVE FACUNDO,          Case No. _____
Individually.                                Hon. _____
                                             Magistrate Judge:_____

        Plaintiffs,

v.

UNITED STATES OF AMERICA,

        Defendant.
_____/
LYNN M. FOLEY  (P35839)
EILEEN E. KROLL  (P44186)
COCHRAN, FOLEY & ASSOCIATES, P.C.
Attorneys for Plaintiffs
15510 Farmington Road
Livonia, Michigan  48154
(734) 425-2400
_____/


## AFFIDAVITS OF MERIT

Pursuant to MCL 600.2912(d), Affidavits of Merit are attached and incorporated herein.


                          ___S/Lynn M. Foley_____
                          COCHRAN FOLEY AND ASSOCIATES, P.C.
                          LYNN M. FOLEY  (P35839)
                          EILEEN E. KROLL  (P44186)
                          Attorneys for Plaintiff
                          15510 Farmington Road
                          Livonia, Michigan  48154
Dated:  May 18, 2011      (734) 425-2400

## AFFIDAVIT OF JOHN MCGUIRE, CNM PURSUANT TO MCL 600.2912D

John McGuire, Certified Nurse Midwife, being first sworn, deposes and testifies as follows:

I am a certified nurse midwife, practicing as a midwife and was working during the majority of my professional time in the active clinical practice as a midwife in the twelve months which preceded the date of the medical negligence set forth below. I am licensed as a midwife by the State of Georgia.

I am familiar with the standard of care for certified nurse midwives, specifically Katherine Nerreter and Mary Ann Fleming, who were involved in the care and treatment of Sara Facundo and her unborn fetus Havick Facundo, beginning on November 13, 2008, and continuing until Havick was born on December 16, 2008. My familiarity with the standard of care is based upon my education, training and experience as a practicing certified nurse midwife.

The nurse midwives had a duty to provide care and treatment to Sara Facundo and her unborn fetus, Havick Facundo, in accordance with the applicable standards of care for midwives practicing in 2008.

I hereby certify that I have reviewed the Notice of Intent to File Claim and all medical records supplied by Plaintiff's attorney concerning the allegations contained in the Notice, and further state the following:

## A. APPLICABLE STANDARD OF PRACTICE OR CARE

As to the midwives Katherine Nerreter and Mary Ann Fleming, providing midwifery obstetrical care and treatment to Sara Facundo and her fetus, Havick Facundo between November, 2008 and December, 2008, the applicable standard of practice or care is as follows:

1. To timely and adequately investigate the patient's complaints, including her continued complaints of abdominal pain, blood in her urine and protein in her urine between December 10, 2008 and December 15, 2008 if they were involved in the care and treatment;

2. That if the patient reports continued abdominal pain and has blood in her urine at 38 weeks gestation that further testing and treatment should be promptly initiated;

3. To understand that in a pregnant woman, with a history of cigarette smoking, a history of kidney stones, and a history of preterm labor, with continued complaints of abdominal pain in her third trimester, requires prompt investigation and examination;

4. To understand that a woman who has signs and symptoms of abdominal pain with a history of kidney stones, smoking and preterm labor, requires an ultrasound and/or an MRI and proper diagnostic work up and to proceed with further medical intervention if necessary in order to prevent intrauterine death of the fetus;

5.  To understand that when a woman is displaying signs and symptoms of ongoing abdominal pain and blood in her urine, that a placental abruption should be part of the differential diagnosis;

6.  To utilize all diagnostic and treatment modalities available to try to mitigate the risks of a placental abruption and prevent fetal death;

7.  That between November 19, 2008 and December 15, 2008 to properly investigate the patient's complaints of abdominal pain, associated with blood and protein in the urine and slow growth or decreased fundal height;

8.  That between November 19, 2008, and December 15, 2008, to order and perform appropriate testing on the fetus to determine fetal well-being including but not limited to Non-stress testing, ultrasounds, and Biophysical Profiles in a timely and appropriate manner;

9.  To diagnose placental abruption in a timely and appropriately manner after performing appropriate testing in a timely manner, and deliver baby Havick promptly by way of cesarean section prior to his intrauterine fetal death;

10.  On December 10, 2008, to order appropriate testing including but not limited to:  an immediate Non-stress test , ultrasound, MRI and a Biophysical Profile to determine fetal well-being;

11.  To understand and recognize the importance of following up with a patient who has abdominal pain, blood in her urine and a history of cigarette smoking, and slow growth or decreased fundal height and advise the patient to return for re-evaluation within a week of being seen on November 25, 2008;

12.  To recognize the importance of following up on the patient with complaints of ongoing abdominal pain and a history of kidney stones and slow growth or decreased fundal height and advise the patient to return for re-evaluation within a week of being seen on November 25, 2008;

ASSUMING A MIDWIFE WAS INVOLVED IN THE CARE AND TREATMENT OF THE PATIENT AFTER NOVEMBER 25, 2008:

13.  To immediately hospitalize the patient on December 10, 2008, for further testing, fetal monitoring and medical intervention in order to ensure maternal and fetal well-being;

14.  To appropriately and timely diagnose the patient with the early stages of a placental abruption and take the appropriate and timely steps to prevent a complete abruption and deliver the fetus to prevent intrauterine fetal demise;

15.  To promptly and appropriately deliver the fetus at 38 weeks to prevent intrauterine fetal demise;

16.  To request that Sara Facundo return to the office or go to the hospital when she called HDI on December 12, 2008, at approximately 9:30 a.m. and advised the staff that she was still experiencing pain, in order to perform a complete evaluation;

17.  To provide honest, accurate, truthful and complete information to the patient about the need for the further medical intervention in order to prevent intrauterine fetal death;

18.  That in the alternative to hospitalizing the patient, to have a honest, accurate and truthful discussion with the patient in order to educate her about regarding signs and symptoms of placental abruption, including but not limited to ongoing abdominal pain, blood in her urine, decreased in fetal movement, in order for the patient to have an accurate understanding of further signs/symptoms to alert the OB/GYN and midwife about and/or the need to seek immediate medical attention;

19.  That in the alternative to hospitalizing the patient, to have the patient return to the office daily for proper evaluation and further testing in order to assess for maternal and fetal well-being;

20.  That in the alternative to hospitalizing the patient, to order non-stress testing, ultrasounds and biophysical profiling urgently and to repeat the testing as necessary in order to assess for maternal and fetal well-being and to prevent intrauterine fetal death;

21.  To timely and appropriately rule in or out a kidney stone, in order to understand that ongoing complaints of abdominal pain, with accompanying blood and protein in the urine, may be related to something other than a kidney stone;

22.  To understand and recognize that placental abruption can cause ongoing complaints of abdominal pain and blood and protein in the urine of a woman who is more than 38 weeks gestation;

23.  To timely and appropriately investigate that patient's complaints of ongoing abdominal pain (as well as blood and protein in the urine) in order to rule in or out a placental abruption;

24.  To diagnose the patient's placental abruption and timely deliver the fetus prior to intrauterine fetal death;

25.  To timely and appropriately communicate with or bring to the OB/Gyn's attention that the patient is having ongoing complaints of abdominal pain in her third trimester, accompanied by blood and protein in her urine;

The comments above are applicable to HDI Ob Gyn & Midwifery Services and Health Delivery, Inc., who are vicariously liable for the negligent actions of its actual, apparent, and/or ostensible agents, servants, and/or employees, including Katherine Nerreter and Mary Ann Fleming.

3

**B.     THE APPLICABLE STANDARD OF PRACTICE OR CARE WAS BREACHED**

In my opinion, and as I have stated below, the applicable standard of practice of care was breached by Katherine Nerreter and Mary Ann Fleming, and/or the professional corporations who received the Notice of Intent to File Claim Under MCLA 600.2912(b).

**C.     THE ACTION THAT SHOULD HAVE BEEN TAKEN OR OMMITED BY THE MEDICAL PROFESSIONALS AND/OR HOSPITAL FACILITY AND/OR PROFESSIONAL CORPORATION IN ORDER TO HAVE COMPLIED WITH THE APPLICABLE STANDARD OF PRACTICE OR CARE:**

As to Katherine Nerreter and Mary Ann Fleming, and any other person providing midwifery obstetrical care and treatment to Sara Facundo and her fetus, Havick Facundo, between November, 2008 and December, 2008, the actions that should have been taken or omitted in order to have complied with the applicable standard of care are as follows:

1.     To timely and adequately investigate the patient's complaints, including her continued complaints of abdominal pain, blood in her urine and protein in her urine between December 10, 2008 and December 15, 2008;

2.     That if the patient reported continued abdominal pain and has blood in her urine at 38 weeks gestation that further testing and treatment should be promptly initiated;

3.     To understand that in a pregnant woman, with a history of cigarette smoking, a history of kidney stones, and a history of preterm labor, with continued complaints of abdominal pain in her third trimester, requires prompt investigation and examination;

4.     To understand that a woman who has signs and symptoms of abdominal pain with a history of kidney stones, smoking and preterm labor, requires an ultrasound and/or an MRI and proper diagnostic work up and to proceed with  further medical intervention if necessary in order to prevent intrauterine death of the fetus;

5.     To understand that when a woman is displaying signs and symptoms of ongoing abdominal pain and blood in her urine, that a placental abruption should be part of the differential diagnosis;

6.     To utilize all diagnostic and treatment modalities available to try to mitigate the risks of a placental abruption and prevent fetal death;

7.     That between November 19, 2008 and December 15, 2008 to properly investigate the patient's complaints of abdominal pain, associated with blood and protein in the urine and slow growth or decreased fundal height;

8.     That between December 10, 2008, and December 15, 2008, to order and perform appropriate testing on the fetus to determine fetal well-being including but not

limited to Non-stress testing, ultrasounds, and Biophysical Profiles in a timely and appropriate manner;

9.   To diagnose placental abruption in a timely and appropriately manner after performing appropriate testing in a timely manner, and deliver baby Havick promptly by way of cesarean section prior to his intrauterine fetal death;

10.   On December 10, 2008, to order appropriate testing including but not limited to: an immediate Non-stress test , ultrasound, MRI and a Biophysical Profile to determine fetal well-being;

11.   To understand and recognize the importance of following up with a patient who has abdominal pain, blood in her urine and a history of cigarette smoking and slow growth or decreased fundal height and advise the patient to return for re-evaluation within a week of being seen on November 25, 2008;

12.   To recognize the importance of following up on the patient with complaints of ongoing abdominal pain and a history of kidney stones and slow growth or decreased fundal height and advise the patient to return for re-evaluation within a week of being seen on November 25, 2008;

ASSUMING A MIDWIFE WAS INVOLVED IN THE CARE AND TREATMENT OF THE PATIENT AFTER NOVEMBER 25, 2008:

13.   To immediately hospitalize the patient on December 10, 2008, for further testing, fetal monitoring and medical intervention in order to ensure maternal and fetal well-being;

14.   To appropriately and timely diagnose the patient with the early stages of a placental abruption and take the appropriate and timely steps to prevent a complete abruption and deliver the fetus to prevent intrauterine fetal demise;

15.   To promptly and appropriately deliver the fetus at 38 weeks to prevent intrauterine fetal demise;

16.   To request that Sara Facundo return to the office or go to the hospital when she called HDI on  December 12, 2008, at approximately 9:30 a.m. and advised the staff that she was still experiencing pain, in order to perform a complete evaluation;

17.   To provide honest, accurate, truthful and complete information to the patient about the need for the further medical intervention in order to prevent intrauterine fetal death;

18.   That in the alternative to hospitalizing the patient, to have a honest, accurate and truthful discussion with the patient in order to educate her about regarding signs and symptoms of placental abruption, including but not limited to ongoing abdominal pain, blood in her urine, decreased in fetal movement, in order for the patient to

have an accurate understanding of further signs/symptoms to alert the OB/GYN and midwife about and/or the need to seek immediate medical attention;

19.    That in the alternative to hospitalizing the patient, to have the patient return to the office daily for proper evaluation and further testing in order to assess for maternal and fetal well-being;

20.    That in the alternative to hospitalizing the patient, to order non-stress testing, ultrasounds and biophysical profiling urgently and to repeat the testing as necessary in order to assess for maternal and fetal well-being and to prevent intrauterine fetal death;

21.    To timely and appropriately rule in or out a kidney stone, in order to understand that ongoing complaints of abdominal pain, with accompanying blood and protein in the urine, may be related to something other than a kidney stone;

22.    To understand and recognize that placental abruption can cause ongoing complaints of abdominal pain and blood and protein in the urine of a woman who is more than 38 weeks gestation;

23.    To timely and appropriately investigate that patient's complaints of ongoing abdominal pain (as well as blood and protein in the urine) in order to rule in or out a placental abruption;

24.    To diagnose the patient's placental abruption and timely deliver the fetus prior to intrauterine fetal death;

25.    To timely and appropriately communicate with or bring to the OB/Gyn's attention that the patient is having ongoing complaints of abdominal pain in her third trimester, accompanied by blood and protein in her urine;

The comments above are applicable to HDI Ob Gyn & Midwifery Services and Health Delivery, Inc., who are vicariously liable for the negligent actions of its actual, apparent, and/or ostensible agents and/or servants and/or employees including Katherine Nerreter and Mary Ann Fleming.

## D.    THE MANNER IN WHICH THE BREACH OF THE STANDARD OF PRACTICE OR CARE WAS THE PROXIMATE CAUSE OF THE INJURY CLAIMED IN THE NOTICE.

The aforementioned breaches of standard of practice or care proximately caused Sara Facundo to suffer a complete placental abruption that went undiagnosed and untreated. As a result of her impending and undiagnosed placental abruption, she was left at risk for intrauterine fetal death due to a disruption of the blood supply and therefore oxygen supply to her placenta and fetus. As a result of the undiagnosed and untreated impending placental abruption the fetus, Havick Facundo, developed fetal non well being and fetal compromise. Due to the fact that the when Sara was in the early stages of a placental abruption and/or a minimal abruption, this caused an unsafe intrauterine environment, and the fetus should have been delivered at 38 weeks, which would have allowed for

6

the safe delivery of a viable, live fetus. Instead, there was decreased blood to the placenta and therefore decreased oxygenation to the fetus, which resulting in the intrauterine hypoxia and/or asphyxia and the fetal death of Havick Facundo.

Specifically, as to Katherine Nerreter and Mary Ann Fleming, who were providing midwifery obstetrical care and treatment to Sara Facundo and Havick Facundo, on or about November, 2008 to December, 2008, they proximately caused the injury and death of Havick Facundo described above (in this section D) by failing and neglecting as follows:

1. To timely and adequately investigate the patient's complaints, including her continued complaints of abdominal pain, blood in her urine and protein in her urine between December 10, 2008 and December 15, 2008;

2. That if the patient reports continued abdominal pain and has blood in her urine at 38 weeks gestation that further testing and treatment should be promptly initiated;

3. To understand that in a pregnant woman, with a history of cigarette smoking, a history of kidney stones, and a history of preterm labor, with continued complaints of abdominal pain in her third trimester, requires prompt investigation and examination;

4. To understand that a woman who has signs and symptoms of abdominal pain with a history of kidney stones, smoking and preterm labor, requires an ultrasound and/or an MRI and proper diagnostic work up and to proceed with further medical intervention if necessary in order to prevent intrauterine death of the fetus;

5. To understand that when a woman is displaying signs and symptoms of ongoing abdominal pain and blood in her urine, that a placental abruption should be part of the differential diagnosis;

6. To utilize all diagnostic and treatment modalities available to try to mitigate the risks of a placental abruption and prevent fetal death;

7. That between November 19, 2008 and December 15, 2008 to properly investigate the patient's complaints of abdominal pain, associated with blood and protein in the urine and slow growth or decreased fundal height ;

8. That between December 10, 2008, and December 15, 2008, to order and perform appropriate testing on the fetus to determine fetal well-being including but not limited to Non-stress testing, ultrasounds, and Biophysical Profiles in a timely and appropriate manner;

9. To diagnose placental abruption in a timely and appropriately manner after performing appropriate testing in a timely manner, and deliver baby Havick promptly by way of cesarean section prior to his intrauterine fetal death;

10.  On December 10, 2008, to order appropriate testing including but not limited to: an immediate Non-stress test, ultrasound, MRI and a Biophysical Profile to determine fetal well-being;

11.  To understand and recognize the importance of following up with a patient who has abdominal pain, blood in her urine and a history of cigarette smoking and slow growth or decreased fundal height and advise the patient to return for re-evaluation within a week of being seen on November 25, 2008;

12.  To recognize the importance of following up on the patient with complaints of ongoing abdominal pain and a history of kidney stones and slow growth or decreased fundal height and advise the patient to return for re-evaluation within a week of being seen on November 25, 2008;

ASSUMING A MIDWIFE WAS INVOLVED IN THE CARE AND TREATMENT OF THE PATIENT AFTER NOVEMBER 25, 2008:

13.  To immediately hospitalize the patient on December 10, 2008, for further testing, fetal monitoring and medical intervention in order to ensure maternal and fetal well-being;

14.  To appropriately and timely diagnose the patient with the early stages of a placental abruption and take the appropriate and timely steps to prevent a complete abruption and deliver the fetus to prevent intrauterine fetal demise;

15.  To promptly and appropriately deliver the fetus at 38 weeks to prevent intrauterine fetal demise;

16.  To request that Sara Facundo return to the office or go to the hospital when she called HDI on December 12, 2008, at approximately 9:30 a.m. and advised the staff that she was still experiencing pain, in order to perform a complete evaluation;

17.  To provide honest, accurate, truthful and complete information to the patient about the need for the further medical intervention in order to prevent intrauterine fetal death;

18.  That in the alternative to hospitalizing the patient, to have a honest, accurate and truthful discussion with the patient in order to educate her about regarding signs and symptoms of placental abruption, including but not limited to ongoing abdominal pain, blood in her urine, decreased in fetal movement, in order for the patient to have an accurate understanding of further signs/symptoms to alert the OB/GYN and midwife about and/or the need to seek immediate medical attention;

19.  That in the alternative to hospitalizing the patient, to have the patient return to the office daily for proper evaluation and further testing in order to assess for maternal and fetal well-being;

8

20.    That in the alternative to hospitalizing the patient, to order non-stress testing, ultrasounds and biophysical profiling urgently and to repeat the testing as necessary in order to assess for maternal and fetal well-being and to prevent intrauterine fetal death;

21.    To timely and appropriately rule in or out a kidney stone, in order to understand that ongoing complaints of abdominal pain, with accompanying blood and protein in the urine, may be related to something other than a kidney stone;

22.    To understand and recognize that placental abruption can cause ongoing complaints of abdominal pain and blood and protein in the urine of a woman who is more than 38 weeks gestation;

23.    To timely and appropriately investigate that patient's complaints of ongoing abdominal pain (as well as blood and protein in the urine) in order to rule in or out a placental abruption;

24.    To diagnose the patient's placental abruption and timely deliver the fetus prior to intrauterine fetal death;

25.    To timely and appropriately communicate with or bring to the OB/Gyn's attention that the patient is having ongoing complaints of abdominal pain in her third trimester, accompanied by blood and protein in her urine;

The opinions above are applicable to HDI Ob Gyn & Midwifery Services and Health Delivery, Inc., who are vicariously liable for the negligent actions of its actual, apparent and/or ostensible agents and/or servants and/or employees, including Katherine Nerreter and Mary Ann Fleming.

The opinions expressed herein may be subject to change upon further review of records and/or materials in this case.

IN THE PRESENCE OF A NOTARY PUBLIC AND WHILE HOLDING UP MY RIGHT HAND, I DO SOLEMNLY SWEAR OR AFFIRM THE TRUTHFULLLNESS OF THIS VOLUNTARILY SIGNED AFFIDAVIT.

DATED:  5-17-2011                    _John McGuire CNM_
                                                   John McGuire, CNM

Subscribed and sworn to before me
this 17th day of May , 20 11 .
_Peggy M. Pile_

Notary Public, Hall County, GA
My Commission Expires: 8-5-12

<u>AFFIDAVIT OF DOUGLAS PHILLIPS M.D. PURSUANT TO MCL 600.2912D</u>

Douglas Phillips M.D., being first sworn, deposes and testifies as follows:

I am a medical doctor practicing as a specialist in obstetrics and was working during the majority of my professional time in the active clinical practice as an obstetrician in the twelve months which preceded the date of the medical negligence set forth below. I am board certified as a specialist in obstetrics and licensed as a physician by the State of New York.

I am familiar with the standard of care for obstetricians, specifically Dr. Saylor and also the nurse midwives, Katherine Nerreter and Mary Ann Fleming, who were involved in the care and treatment of Sara Facundo and her unborn fetus Havick Facundo, beginning on November 13, 2008, and continuing until Havick was born on December 16, 2008. My familiarity with the standard of care is based upon my education, training and experience as a practicing board certified obstetrician for over 20 years.

Dr. Saylor and nurse midwives had a duty to provide care and treatment to Sara Facundo and her unborn fetus, Havick Facundo, in accordance with the applicable standards of care for an obstetrician and midwives practicing in 2008.

I hereby certify that I have reviewed the Notice of Intent to File Claim and all medical records supplied by Plaintiff's attorney concerning the allegations contained in the Notice, and further state the following:

## A.    APPLICABLE STANDARD OF PRACTICE OR CARE

As to the obstetrician, Dr. Saylor and the midwives providing obstetrical care and treatment to Sara Facundo and her fetus, Havick Facundo between November, 2008 and December, 2008, the applicable standard of practice or care is as follows:

1.     To timely and adequately investigate the patient's complaints, including her continued complaints of abdominal pain, blood in her urine and protein in her urine between December 10, 2008 and December 15, 2008;

2.     That if the patient reports continued abdominal pain and has blood in her urine at 38 weeks gestation that further testing and treatment should be promptly initiated;

3.     To understand that in a pregnant woman, with a history of cigarette smoking, a history of kidney stones, and a history of preterm labor, with continued complaints of abdominal pain in her third trimester, requires prompt investigation and examination;

4.     To understand that a woman who is displaying signs and symptoms of abdominal pain with a history of kidney stones, smoking and preterm labor, requires an ultrasound and/or an MRI and proper diagnostic work up and to proceed with further medical intervention if necessary in order to prevent intrauterine death of the fetus;

5.   To understand that when a woman is displaying signs and symptoms of ongoing abdominal pain and blood in her urine, that a placental abruption should be part of the differential diagnosis;

6.   To utilize all diagnostic and treatment modalities available to try to mitigate the risks of a placental abruption and prevent fetal death;

7.   That between November 19, 2008 and December 15, 2008 to properly investigate the patient's complaints of abdominal pain, associated with blood and protein in the urine;

8.   That between December 10, 2008, and December 15, 2008, to perform appropriate testing on the fetus to determine fetal well-being including but not limited to Non-stress testing, ultrasounds, and Biophysical Profiles in a timely and appropriate manner;

9.   To diagnose placental abruption in a timely and appropriately manner after performing appropriate testing in a timely manner, and deliver baby Havick promptly by way of cesarean section prior to his intrauterine fetal death;

10.  On December 10, 2008, to order appropriate testing including but not limited to: an immediate Non-stress test , ultrasound, MRI and a Biophysical Profile to determine fetal well-being;

11.  To understand and recognize the importance of following up with a patient who has abdominal pain, blood in her urine and a history of cigarette smoking;

12.  To recognize the importance of following up on the patients complaints of ongoing abdominal pain and a history of kidney stones;

13.   To immediately hospitalize the patient on December 10, 2008, for further testing, fetal monitoring and medical intervention in order to ensure maternal and fetal well-being;

14.  To appropriately and timely diagnose the patient with the early stages of a placental abruption and take the appropriate and timely steps to prevent a complete abruption and deliver the fetus to prevent intrauterine fetal demise;

15.  To promptly and appropriately deliver the fetus at 38 weeks to prevent intrauterine fetal demise;

16.  To request that Sara Facundo return to the office or go to the hospital when she called HDI on December 12, 2008, at approximately 9:30 a.m. and advised the staff that she was still experiencing pain, in order to perform a complete evaluation;

17.  To provide honest, accurate, truthful and complete information to his patient about the need for the further medical intervention in order to prevent intrauterine fetal death;

2

18.    That in the alternative to hospitalizing the patient, to have a honest, accurate and truthful discussion with the patient in order to educate her about regarding signs and symptoms of placental abruption, including but not limited to ongoing abdominal pain, blood in her urine, decreased in fetal movement, in order for the patient to have an accurate understanding of further signs/symptoms to alert the OB/GYN about and/or the need to seek immediate medical attention;

19.    That in the alternative to hospitalizing the patient, to have the patient return to the office daily for proper evaluation and further testing in order to assess for maternal and fetal well-being;

20.    That in the alternative to hospitalizing the patient, to order non-stress testing, ultrasounds and biophysical profiling urgently and to repeat the testing as necessary in order to assess for maternal and fetal well-being and to prevent intrauterine fetal death;

21.    To timely and appropriately rule in or out a kidney stone, in order to understand that ongoing complaints of abdominal pain, with accompanying blood and protein in the urine, may be related to something other than a kidney stone;

22.    To understand and recognize that placental abruption can cause ongoing complaints of abdominal pain and blood and protein in the urine of a woman who is more than 38 weeks gestation;

23.    To timely and appropriately investigate that patient's complaints of ongoing abdominal pain (as well as blood and protein in the urine) in order to rule in or out a placental abruption;

24.    To diagnose the patient's placental abruption and timely deliver the fetus prior to intrauterine fetal death.

The comments above are applicable to HDI Ob Gyn & Midwifery Services and Health Delivery, Inc., who are vicariously liable for the negligent actions of its actual, apparent, and/or ostensible agents, servants, and/or employees, including Dr. Saylor, Katherine Nerreter and Mary Ann Fleming.

## B.    THE APPLICABLE STANDARD OF PRACTICE OR CARE WAS BREACHED

In my opinion, and as I have stated below, the applicable standard of practice of care was breached by Dr. Saylor, Katherine Nerreter and Mary Ann Fleming, and/or the professional corporations who received the Notice of Intent to File Claim Under MCLA 600.2912(b).

3

C.     THE ACTION THAT SHOULD HAVE BEEN TAKEN OR OMMITED BY THE
       MEDICAL PROFESSIONALS AND/OR HOSPITAL FACILITY AND/OR
       PROFESSIONAL CORPORATION IN ORDER TO HAVE COMPLIED WITH
       THE APPLICABLE STANDARD OF PRACTICE OR CARE:

As to Dr. Saylor, Katherine Nerreter and Mary Ann Fleming, and any other person providing
obstetrical care and treatment to Sara Facundo and her fetus, Havick Facundo, between November ,
2008 and December, 2008, the actions that should have been taken or omitted in order to have
complied with the applicable standard of care are as follows:

1.     Timely and adequately investigated the patient's complaints, including her continued
       complaints of abdominal pain, blood in her urine and protein in her urine between
       December 10, 2008 and December 15, 2008;

2.     That if the patient reported continued abdominal pain and has blood in her urine at
       38 weeks gestation promptly initiated further testing and treatment;

3.     Understood that a pregnant woman, with a history of cigarette smoking, a history of
       kidney stones, and a history of preterm labor, with continued complaints of
       abdominal pain in her third trimester, required prompt investigation and
       examination;

4.     Understood that when a woman is displaying signs and symptoms of abdominal pain
       with a history of kidney stones, smoking and preterm labor, she required an
       ultrasound and/or an MRI and proper diagnostic work up and proceeded with
       further medical intervention if necessary in order to prevent intrauterine death of the
       fetus;

5.     Understood that when a woman displays signs and symptoms of ongoing abdominal
       pain and blood in her urine, that a placental abruption should have been part of the
       differential diagnosis;

6.     Utilized all diagnostic and treatment modalities available to try to mitigate the risks of
       a placental abruption and prevent fetal death;

7.     That between November 19, 2008 and December 15, 2008 to properly investigate
       the patient's complaints of abdominal pain, associated with blood and protein in the
       urine;

8.     That between December 10, 2008, and December 15, 2008, performed appropriate
       testing on the fetus to determine fetal well-being including but not limited to Non-
       stress testing, ultrasounds, and Biophysical Profiles in a timely and appropriate
       manner;

9.     Diagnosed placental abruption in a timely and appropriate manner after performing
       appropriate testing in a timely manner, and delivered baby Havick promptly by way
       of cesarean section prior to his intrauterine fetal death;

4

10.    On December 10, 2008, ordered appropriate testing including but not limited to:  an immediate Non-stress test, ultrasound, MRI and a Biophysical Profile to determine fetal well-being;

11.    Understood and recognized the importance of following up with a patient who has abdominal pain, blood in her urine and a history of cigarette smoking;

12.    Recognized the importance of following up on the patients complaints of ongoing abdominal pain and a history of kidney stones;

13.    Immediately hospitalized the patient on December 10, 2008, for further testing, fetal monitoring and medical intervention in order to ensure maternal and fetal well-being;

14.    Appropriately and timely diagnosed the patient with the early stages of a placental abruption and taken the appropriate and timely steps to prevent a complete abruption and deliver the fetus to prevent intrauterine fetal demise;

15.    Promptly and appropriately delivered the fetus at 38 weeks to prevent intrauterine fetal demise;

16.    Requested that the patient return to the office or go to the hospital when she called HDI on  December 12, 2008, at approximately 9:30 a.m. and advised the staff that she was still experiencing pain, in order to perform a complete evaluation;

17.    Provided honest, accurate, truthful and complete information to his patient about the need for the further medical intervention in order to prevent intrauterine fetal death;

18.    That in the alternative to hospitalizing the patient, have a honest, accurate and truthful discussion with the patient in order to educate her about regarding signs and symptoms of placental abruption, including but not limited to ongoing abdominal pain, blood in her urine, decreased in fetal movement, in order for the patient to have an accurate understanding of further signs/symptoms to alert the OB/GYN about and/or the need to seek immediate medical attention;

19.    That in the alternative to hospitalizing the patient, have the patient return to the office daily for proper evaluation and further testing in order to assess for maternal and fetal well-being;

20.    That in the alternative to hospitalizing the patient, ordered non-stress testing, ultrasounds and biophysical profiling urgently and to repeat the testing as necessary in order to assess for maternal and fetal well-being and to prevent intrauterine fetal death;

21.    Timely and appropriately ruled in or out a kidney stone, in order to understand that ongoing complaints of abdominal pain, with accompanying blood and protein in the urine, may be related to something other than a kidney stone;

22.    Understood and recognized that placental abruption can cause ongoing complaints of abdominal pain and blood and protein in the urine of a woman who is more than 38 weeks gestation;

23.    Timely and appropriately investigated the patient's complaints of ongoing abdominal pain (as well as blood and protein in the urine) in order to rule in or out a placental abruption;

24.    Diagnosed the patient's placental abruption and timely deliver the fetus prior to intrauterine fetal death.

The comments above are applicable to HDI Ob Gyn & Midwifery Services and Health Delivery, Inc., who are vicariously liable for the negligent actions of its actual, apparent, and/or ostensible agents and/or servants and/or employees including, Dr. Saylor, Katherine Nerreter and Mary Ann Fleming.

## D.    THE MANNER IN WHICH THE BREACH OF THE STANDARD OF PRACTICE OR CARE WAS THE PROXIMATE CAUSE OF THE INJURY CLAIMED IN THE NOTICE.

The aforementioned breaches of standard of practice or care proximately caused Sara Facundo to suffer a complete placental abruption that went undiagnosed and untreated. As a result of her impending and undiagnosed placental abruption, she was left at risk for intrauterine fetal death due to a disruption of the blood supply and therefore oxygen supply to her placenta and fetus. As a result of the undiagnosed and untreated impending placental abruption the fetus, Havick Facundo, developed fetal non well being and fetal compromise. Due to the fact that the when Sara was in the early stages of a placental abruption and/or a minimal abruption, this caused an unsafe intrauterine environment, and the fetus should have been delivered at 38 weeks, which would have allowed for the safe delivery of a viable, live fetus. Instead, there was decreased blood to the placenta and therefore decreased oxygenation to the fetus, which resulting in the intrauterine hypoxia and/or asphyxia and the fetal death of Havick Facundo.

Specifically, as to Dr. Saylor, Katherine Nerreter and Mary Ann Fleming, who were providing obstetrical care and treatment to Sara Facundo and Havick Facundo, on or about November, 2008 to December, 2008, they proximately caused the injury and death of Havick Facundo described above (in this section D) by failing and neglecting as follows:

1.    To timely and adequately investigate the patient's complaints, including her continued complaints of abdominal pain, blood in her urine and protein in her urine between December 10, 2008 and December 15, 2008;

2.    That if the patient reports continued abdominal pain and has blood in her urine at 38 weeks gestation failing and neglecting to initiate further testing and treatment promptly;

3.    To understand that in a pregnant woman, with a history of cigarette smoking, a history of kidney stones, and a history of preterm labor, with continued complaints

6

of abdominal pain in her third trimester, requires prompt investigation and examination.

4.    To understand that when a woman is displaying signs and symptoms of abdominal pain with a history of kidney stones, smoking and preterm labor, requires an ultrasound and/or an MRI and proper diagnostic work up and to proceed with further medical intervention if necessary in order to prevent intrauterine death of the fetus;

5.    To understand that when a woman is displaying signs and symptoms of ongoing abdominal pain and blood in her urine, that a placental abruption should be part of the differential diagnosis;

6.    To utilize all diagnostic and treatment modalities available to try to mitigate the risks of a placental abruption and prevent fetal death;

7.    That between November 19, 2008 and December 15, 2008, to properly investigate the patient's complaints of abdominal pain, associated with blood and protein in the urine;

8.    That between December 10, 2008, and December 15, 2008, to perform appropriate testing on the fetus to determine fetal well-being including but not limited to Non-stress testing, ultrasounds, and Biophysical Profiles in a timely and appropriate manner;

9.    To diagnose placental abruption in a timely and appropriately manner after performing appropriate testing in a timely manner, and deliver baby Havick promptly by way of cesarean section prior to his intrauterine fetal death;

10.    On December 10, 2008, ordered appropriate testing including but not limited to: an immediate Non-stress test, ultrasound, MRI and a Biophysical Profile to determine fetal well-being;

11.    To understand and recognize the importance of following up with a patient who has abdominal pain, blood in her urine and a history of cigarette smoking;

12.    To recognize the importance of following up on the patients complaints of ongoing abdominal pain and a history of kidney stones;

13.    To immediately hospitalize the patient on December 10, 2008, for further testing, fetal monitoring and medical intervention in order to ensure maternal and fetal well-being;

14.    To appropriately and timely diagnose the patient with the early stages of a placental abruption and take the appropriate and timely steps to prevent a complete abruption and deliver the fetus to prevent intrauterine fetal demise;

7

15. To promptly and appropriately deliver the fetus at 38 weeks to prevent intrauterine fetal demise;

16. To request that Sara Facundo return to the office or go to the hospital when she called HDI on December 12, 2008, at approximately 9:30 a.m. and advised the staff that she was still experiencing pain, in order to perform a complete evaluation;

17. To provide honest, accurate, truthful and complete information to his patient about the need for the further medical intervention in order to prevent intrauterine fetal death;

18. That in the alternative to hospitalizing the patient, to have a honest, accurate and truthful discussion with the patient in order to educate her about regarding signs and symptoms of placental abruption, including but not limited to ongoing abdominal pain, blood in her urine, decreased in fetal movement, in order for the patient to have an accurate understanding of further signs/symptoms to alert the OB/GYN about and/or the need to seek immediate medical attention;

19. That in the alternative to hospitalizing the patient, to have the patient return to the office daily for proper evaluation and further testing in order to assess for maternal and fetal well-being;

20. That in the alternative to hospitalizing the patient, to order non-stress testing, ultrasounds and biophysical profiling urgently and to repeat the testing as necessary in order to assess for maternal and fetal well-being and to prevent intrauterine fetal death;

21. To timely and appropriately rule in or out a kidney stone, in order to understand that ongoing complaints of abdominal pain, with accompanying blood and protein in the urine, may be related to something other than a kidney stone;

22. To understand and recognize that placental abruption can cause ongoing complaints of abdominal pain and blood and protein in the urine of a woman who is more than 38 weeks gestation;

23. To timely and appropriately investigate that patient's complaints of ongoing abdominal pain (as well as blood and protein in the urine) in order to rule in or out a placental abruption;

24. To diagnose the patient's placental abruption and timely deliver the fetus prior to intrauterine fetal death.

The opinions above are applicable to HDI Ob Gyn & Midwifery Services and Health Delivery, Inc., who are vicariously liable for the negligent actions of its actual, apparent and/or ostensible agents and/or servants and/or employees, including Dr. Saylor, Katherine Nerreter and Mary Ann Fleming.

8

The opinions expressed herein may be subject to change upon further review of records and/or materials in this case.

IN THE PRESENCE OF A NOTARY PUBLIC AND WHILE HOLDING UP MY RIGHT HAND, I DO SOLEMLY SWEAR OR AFFIRM THE TRUTHFULLLNESS OF THIS VOLUNTARILY SIGNED AFFIDAVIT.

DATED:_____

Douglas Phillips, M.D.

Subscribed and sworn to before me
this _11_ day of _October_ _2010_

Notary Public, _Nassau_ County, _NY_
My Commission Expires:_April 20, 2012_

MICHAEL SCHWARTZ
NOTARY PUBLIC - STATE OF NEW YORK
NO. 01SC6204677
QUALIFIED IN NASSAU COUNTY
COMMISSION EXPIRES APRIL 20, 2012